## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| MAINEGENERAL MEDICAL CENTER, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| CAROLE JOHNSON, in her official capacity as | ) Civil Action No.: 1:24-cv-02187 |
| Administrator, Health Resources and Services | ) |
| Administration, | ) |
| | ) |
| and | ) |
| | ) |
| XAVIER BECERRA, in his official capacity as | ) |
| Secretary, United States Department of Health and | ) |
| Human Services, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff MaineGeneral Medical Center (MaineGeneral), by and through its attorneys, Hall, Render, Killian, Heath & Lyman, P.C., moves for a temporary restraining order under Federal Rule of Civil Procedure 65(b) against Carole Johnson, in her official capacity as Administrator, Health Resources and Services Administration, and Xavier Becerra, in his official capacity as Secretary, United States Department of Health and Human Services, because MaineGeneral will suffer calamitous and irreparable harm should the Court not grant a restraining order, whereas the government would be no worse off should the Court grant this relief yet the government ultimately prevail in this action.

TABLE OF CONTENTS

Introduction ....................................................................................................................... 1

Background ......................................................................................................................... 2

Argument ............................................................................................................................ 5

    I.    MaineGeneral has shown that all four factors for a temporary restraining order favor enjoining HRSA ......................................................................................................... 5

       A.  Legal standard for a temporary restraining order ......................................... 5

       B.  MaineGeneral is likely to succeed on the merits ......................................... 6

          1.   The audit guidelines are legally binding ................................................... 6

          2.   MaineGeneral is likely to succeed on the merits because HRSA failed to follow the Manufacturer Audit Guidelines, prejudicing MaineGeneral ............................................. 7

       C.  MaineGeneral is likely to suffer irreparable harm in the absence of temporary injunctive relief ...................................................................................................... 8

       D.  The balance of equities supports a temporary restraining order ................................. 10

       E.  A temporary restraining order supports the public interest ........................................ 11

Conclusion ........................................................................................................................ 11

**TABLE OF AUTHORITIES**

**CASES**

*Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101 (D.D.C. 2022) ........................ 12

*Christensen v. Harris Cty.*, 529 U.S. 576 (2000) ............................................................... 6

*Cont'l Res., Inc. v. Gould*, 410 F. Supp. 3d 30 (D.D.C. 2019) ......................................... 6, 9

*Costa v. Bazron*, 456 F. Supp. 3d 126 (D.D.C. 2020). ...................................................... 6

*Elevance Health, Inc. v. Becerra*, — F. Supp. 3d. —, 2024 WL 2880415 (D.D.C. 2024) ........... 7

*Genesis Health Care, Inc. v. Becerra*, 701 F. Supp. 3d 312 (D.S.C. 2023) ................................... 9

*Hall v. Johnson*, 599 F. Supp. 2d 1 (D.D.C. 2009) ........................................................... 5

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ..................................... 12

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) ........ 7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F. Supp. 2d 27 (D.D.C. 2002) ............ 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29 (1983) ............................. 6

*Pursuing America's Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) ..................................... 12

*Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022) ....................................................... 6, 9, 11

*United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ...................................... 7

*Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020) .................................... 10

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................... 6

**STATUTES**

42 U.S.C. § 1396r-8 .................................................................................................. 2

42 U.S.C. § 256b ...................................................................................... 2, 3, 5, 12

44 U.S.C. § 1507 ..................................................................................................... 8

5 U.S.C. § 706 ......................................................................................................... 6

**REGULATIONS**

59 Fed. Reg. 30,021 (June 10, 1994) ......................................................................... 7

61 Fed. Reg. 65,406 (Dec. 12, 1996) ...................................................................... 3, 8

**Introduction**

Through its Complaint (ECF No. 1), Plaintiff MaineGeneral Medical Center (MaineGeneral) has challenged the legality of the final agency decision by the Health Resources & Services Administration (HRSA) to authorize Johnson & Johnson (J&J), a manufacturer that participates in the drug pricing program authorized under Section 340B of the Public Health Service Act (the "340B Program"), to audit MaineGeneral's confidential business records. *Id.* at ¶ 1. By filing this action instead of cooperating with what MaineGeneral believes is an improperly instituted audit, MaineGeneral was and is concerned that HRSA would terminate its status as a 340B Program participating "covered entity" while this action is pending. This concern was validated on November 12, when HRSA notified MaineGeneral in writing that unless MaineGeneral establishes an audit start date by November 26, HRSA reserved the right to terminate MaineGeneral from the 340B Program. Such a result would be devastating for MaineGeneral and would cause irreparable harm, not only for itself, but for the hundreds of thousands of patients that it serves.

Therefore, MaineGeneral moves the Court for immediate entry of a temporary restraining order under Federal Rule of Civil Procedure 65(b) to maintain the status quo—that is, to prevent HRSA from terminating MaineGeneral as a covered entity under the 340B Program—for as long as the Court deems just and proper, but in no event less than fourteen days following the date of the Court's order, and further requests that this Court schedule a hearing on this Motion as soon as practicable.

Pursuant to Local Civil Rule 7(m), on November 18, 2024, the undersigned counsel notified counsel for the Defendants of MaineGeneral's intent to file a motion for a temporary restraining order. On November 20, 2024, Defendants indicated that they oppose MaineGeneral's

Motion. To comply with Local Civil Rule 65.1(a), the undersigned counsel filed a copy of this motion through ECF, which will provide notification to all counsel of record for the Defendants.

## Background

MaineGeneral is a Maine non-profit corporation with a principal place of business in Augusta, Maine. ECF No. 1, ¶ 29. MaineGeneral operates a rural Disproportionate Share Hospital (the "Hospital") with the same name, which has 198 in-patient beds. *Id.* In addition to having Disproportionate Share status, the Hospital has also been designated as a "Sole Community Hospital," a status reserved for hospitals that serve remote communities.  The Hospital has participated in the 340B Program for more than fifteen years. *Id.* The 340B Program savings directly support the Hospital's operations, ability to provide services where reimbursement is insufficient from payors, including Medicare and Medicaid, and charitable care.  In "the most rural state in the nation," Maine Center for Disease Control & Prevention, *Rural Health and Primary Care*  (https://www.maine.gov/dhhs/mecdc/public-health-systems/rhpc/rural-health.shtml)  (last accessed Nov. 21, 2024), the 340B Program is a lifeline that preserves access to important services, such as the Hospital's Cancer Center.

In the wake of rapidly increasing drug prices, Congress created the 340B Program in 1992 to permit covered entities, all of which are safety-net providers, including primarily hospitals and grant-funded clinics, to purchase certain drugs at the same discounted rate that state Medicaid programs pay. *Id.* at ¶¶ 32–33; *see also* 42 U.S.C. § 256b(a)(1) & § 256b(a)(4); 42 U.S.C. § 1396r-8. Under the 340B statute, Congress also empowered drug manufacturers to conduct audits of covered entities to evaluate their compliance with certain provisions, provided the audits are conducted in accordance with HRSA guidelines. ECF No. 1, ¶ 35 (citing 42 U.S.C. § 256b(a)(5)(C). Those guidelines, set forth at 61 Fed. Reg. 65,406 (Dec. 12, 1996) *et seq.*

(hereinafter "Manufacturer Audit Guidelines" or "Guidelines"), include requiring the manufacturer to provide notice to the covered entity of potential violations the manufacturer believes the covered entity has committed. *Id.* at 65,410. This notice triggers a mandatory thirty-day period for the parties to "attempt in good faith to resolve the matter." *Id.* If the good faith attempt fails, only then may the manufacturer inform HRSA of its intent to audit the covered entity. *Id.*

On April 22, 2024, J&J requested a meeting with MaineGeneral purportedly to "better understand the reasons for the growth in [its] 340B utilization program." ECF No. 1, Ex. 1, p. 3. A conference call was scheduled for May 15, 2024; however, the call was canceled due to the lack of availability of the necessary participants. At no time during any of the  email communications exchanged between MaineGeneral and J&J did J&J disclose that it was seeking to audit MaineGeneral's 340B program, nor did J&J provide notice of alleged potential violations.

As indicated by J&J's auditor, Deloitte & Touche LLP, HRSA granted J&J approval to audit MaineGeneral on June 19, 2024. ECF No. 1, Ex. 6, p. 1. Thus,  J&J never provided any notice to MaineGeneral of potential violations before HRSA approved J&J's audit of MaineGeneral, let alone the requisite thirty-day notice.  *See* ECF No. 1, Ex. 8 (HRSA email dated July 10, 2024 admitting it approved the audit of MaineGeneral despite HRSA's tacit acknowledgement that the MaineGeneral had not received notice of any alleged violations from J&J.)

After filing this action, MaineGeneral requested that J&J refrain from pursuing the audit of MaineGeneral during the pendency of this action. **Ex. 1**, Email from J. Junger to J. Handwerker dated Aug. 7, 2024. J&J, through its counsel, declined, stating that "the filing of these suits does not halt J&J's audits" and that "J&J intends to move forward with its audit … consistent with the audit work plans that HRSA approved." **Ex. 2,** Email from J. Handwerker to J. Junger dated Aug.

8, 2024. MaineGeneral also requested that HRSA refrain from "remov[ing] [MaineGeneral] from the 340B Program or tak[ing] similar enforcement actions while th[is] challenge[] [is] pending." **Ex. 3**, Email from T. Nova to C. Britton dated Aug. 7, 2024. HRSA confirmed receipt of MaineGeneral's request the same day yet said nothing about possibly terminating MaineGeneral from the 340B Program. **Ex. 4**, Email from C. Britton to T. Nova dated Aug. 7, 2024. Instead, HRSA waited more than three months to send MaineGeneral a substantive letter, in which it demanded that MaineGeneral provide a start date for the audit by November 26 or otherwise face potential termination from the 340B Program. **Ex. 5**, Ltr. From C. Britton to T. Brann dated Nov. 12, 2024.

On November 18, 2024, MaineGeneral informed counsel for the Defendants that MaineGeneral intended to file a motion for a temporary restraining order. **Ex. 6**, Emails between B. Helms and J. Bardo (dated Nov. 18 & 20, 2024). DOJ, on behalf of Defendants, responded on November 20 and indicated that Defendants oppose MaineGeneral's motion. (*Id.*). DOJ further noted that "HRSA's ***typical practice*** is to make termination of a covered entity effective as of the start of the next quarter," and pursuant to that typical practice any such termination of MaineGeneral would not be before January 1, 2025. (*Id.*) (emphasis added). However, DOJ's explanation of HRSA's "typical practice" does not assure MaineGeneral that HRSA would not deviate from its "typical practice" and choose to terminate MaineGeneral's 340B covered entity status at some point earlier than January 1, 2025. (*See id.*). Indeed, as far as MaineGeneral is aware, there is nothing that would prevent HRSA from terminating MaineGeneral's 340B covered entity status as early as November 27, 2024.

As for covered entities' obligations, the 340B statute prohibits covered entities from engaging in "duplicate discounts" and "diversion," as set forth in 42 U.S.C. § 256b(a)(5)(A)–(B).

It also establishes penalties for such violations. *Id.* at 42 U.S.C. § 256b(a)(5)(D) & 42 U.S.C. § 256b(d)(2)(B)(v). If HRSA determines that a covered entity violated these provisions of the 340B statute, it can impose monetary penalties or even "remov[e] the covered entity from the drug discount program" altogether. *Id.* at 42 U.S.C. § 256b(a)(5)(C); 42 U.S.C. § 256b(d)(2)(B)(v)(I) & (II). The 340B statute does not clearly establish a penalty for a covered entity that does not participate in a manufacturer audit. However, through its November 12 letter, HRSA has taken the position that it could remove MaineGeneral from the program unless MaineGeneral participates in J&J's audit. **Ex. 5**.

Because of the significant repercussions that can occur should MaineGeneral refuse to comply with what it believes to be an unlawfully approved audit, MaineGeneral now moves the Court for immediate entry of a temporary restraining order under Federal Rule of Civil Procedure 65(b) to maintain its status quo as a covered entity under the 340B Program. Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff is willing and able to provide proper security in an amount specified by the Court—although MaineGeneral is not aware of any costs or damages that Defendants will sustain should they ultimately prevail in this action.

**Argument**

**I.    MaineGeneral has shown that all four factors for a temporary restraining order favor enjoining HRSA**

**A.    Legal standard for a temporary restraining order**

Temporary restraining orders are measured against the same standard as preliminary injunctions. *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009); *accord. Costa v. Bazron*, 456 F. Supp. 3d 126, 133 (D.D.C. 2020). This relief is "generally a 'stopgap measure' meant only to 'preserve the relative positions of the parties' until trial." *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) (citation omitted). A plaintiff moving for a temporary restraining order must make a

"clear showing" that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of relief, (3) the balance of equities favor an injunction, and (4) the public interest is served by an injunction. *Id.*; *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### B.     MaineGeneral is likely to succeed on the merits

Under the Administrative Procedure Act, courts must "hold unlawful and set aside" any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (D) without observance of procedure required by law…." 5 U.S.C. § 706(2)(A) & (D). Likewise, courts "must [] enforce the 'unambiguous' terms of existing regulations…" *Cont'l Res., Inc. v. Gould*, 410 F. Supp. 3d 30, 35 (D.D.C. 2019) (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000)). Furthermore, the APA requires agencies to engage in "reasoned decisionmaking." *Gould*, 410 F. Supp. 3d at 36 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 52 (1983))[1] Finally, where an agency acts contrary to its own regulations to the prejudice of others, its actions are "contrary to law and thus arbitrary and capricious." *Elevance Health, Inc. v. Becerra*, — F. Supp. 3d. —, 2024 WL 2880415, *18 (D.D.C. 2024) (*citing United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)).

### 1.   The audit guidelines are legally binding

When HRSA proposed the Manufacturer Audit Guidelines in the Federal Register, followed the customary notice and comment process, and then published the final version in the Federal Register, HRSA made the Guidelines binding on entities that participate in the 340B

---

[1] Because the instant Motion, and this action in general, simply asks the Court to require HRSA to comply with the unambiguous terms of its own regulation, the Court need not grapple with any issues relating to the termination of *Chevron* deference by the *Loper Bright* decision. That is, MaineGeneral is not asking the Court to determine whether HRSA's regulations correctly interpret a statute. Rather, MaineGeneral is merely asking the Court to require HRSA to comply with its own unambiguous regulation.

Program—both manufacturers and covered entities. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 683 (2020) (a document published in the Federal Register is binding if it "contain[s] all of the elements of a notice of proposed rulemaking as required by the APA."). Specifically, in 1994, the Secretary published a Notice with proposed Guidelines and collected public comments on them. 59 Fed. Reg. 30,021 (June 10, 1994). In 1996, the Secretary responded to comments and published the Guidelines in a Final Notice. 61 Fed. Reg. at 65,406. In both documents, he invoked section (a)(5)(C) and provided not just a summary, but a full copy of the Guidelines in proposed and then final form. These publications are "sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C. § 1507. Therefore, there is no question that the Guidelines are binding.

### 2. MaineGeneral is likely to succeed on the merits because HRSA failed to follow the Manufacturer Audit Guidelines, prejudicing MaineGeneral

Here, HRSA's audit guidelines are clear and unambiguous: a manufacturer that suspects a covered entity of committing a violation "***shall*** notify the covered entity in writing when it believes the covered entity has violated provisions of section 340B." 61 Fed. Reg. at 65,410 (emphasis added). After receiving such notice, the "manufacturer and the covered entity ***shall*** have at least 30 days from the date of notification to attempt in good faith to resolve the matter." *Id.* (emphasis added). If, and only if, "the matter is not resolved and the manufacturer desires to perform an audit, [then] the manufacturer ***must*** file an audit work plan" with HRSA. *Id.* (emphasis added). Only after reviewing the audit work plan may HRSA decide to permit the audit to proceed by declining to intervene. *Id.* Because the thirty-day good faith period is mandatory, HRSA determined that it is not necessary for a covered entity to review and comment on a proposed audit work plan before HRSA approves it. *Id.* at 65,408.

Yet here, MaineGeneral never received notice of any potential violations from J&J. ECF

No. 1, Ex. 8. Because notice was not given, MaineGeneral and J&J never engaged in a thirty-day good faith period. Yet HRSA granted approval for J&J to audit MaineGeneral. ECF No. 1, Ex. 6, p. 1. Consequently, HRSA's decision to permit the audit to proceed ignored its binding regulation and departed from "reasoned decisionmaking." Accordingly, the likely outcome of this litigation is that the Court will have to reverse HRSA's decision permitting J&J to audit MaineGeneral. *See Gould*, 410 F. Supp. 3d at 36–37 (reversing agency decision that was "plainly erroneous [and] inconsistent with the regulation" and departed from "reasoned decisionmaking"); *see also Genesis Health Care, Inc. v. Becerra*, 701 F. Supp. 3d 312, 321 (D.S.C. 2023) (noting that after a covered entity initiated a lawsuit against HRSA, HRSA "vacated its audit findings and reinstated [the covered entity] into the 340B Program" and granting summary judgment in part against HRSA because of its "lack of consistency").

In short, because HRSA departed from the binding, unambiguous language of its own regulation, and in so doing deviated from reasoned decisionmaking, HRSA has no leg to stand on to support its decision approving the audit of MaineGeneral. Therefore, MaineGeneral is likely to prevail on the merits, which means this factor strongly favors instituting a temporary restraining order against HRSA to maintain MaineGeneral's status as a covered entity.

### C. MaineGeneral is likely to suffer irreparable harm in the absence of temporary injunctive relief

In general, "courts are institutionally wary of granting relief that disrupts, rather than preserves, the status quo, especially when that relief cannot be undone if the non-movant ultimately wins on the merits." *Singh*, 56 F.4th at 95 (citation omitted). Conversely, courts are more inclined to grant injunctive relief where the moving party seeks to maintain the status quo. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F. Supp. 2d 27, 34 (D.D.C. 2002) (granting preliminary injunction that "merely holds the defendants to the promise they made when they

voluntarily entered their employment agreements").

Here, MaineGeneral is currently a covered entity under the 340B Program and has been for more than fifteen years. Through this Motion, it respectfully requests simply to maintain that status until the Court is able to set a hearing on this motion, at which time Defendants should be directed to show cause, if there be any, why an injunction should not be issued.

On the other hand, should HRSA decide, and be permitted, to terminate the MaineGeneral's participation in the 340B Program while this lawsuit is pending, such a decision would be catastrophic for MaineGeneral. MaineGeneral is working to quantify the exact harm it would suffer from termination in the 340B Program, which MaineGeneral expects to present in a forthcoming Motion for Preliminary Injunction, after it verifies the savings it enjoys under the 340B Program and the cost-saving measures it would have to employ should it immediately lose access to those savings. However, preliminary estimates suggest MaineGeneral could instantly face millions in additional costs per month should it lose access to 340B discount pricing. Were that to occur, MaineGeneral would almost immediately need to start looking at ways to reduce costs, such as eliminating programs. *See Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 56 (D.D.C. 2020) ("'Obstacles' that 'unquestionably make it more difficult for an organization to accomplish its primary mission … provide injury for purposes both of standing and irreparable harm.'") (cleaned up, citation omitted).  And when programs are eliminated, patients lose access to treatment they need. *See id.* at 59 ("The Court also does not turn a blind eye to the reality that here, 'economic loss' … means 'reducing [health-care] services' to patients, many of whom are indigent.") (citation omitted).

Moreover, if HRSA terminated MaineGeneral as a covered entity as it has threatened to do, MaineGeneral would be unable to remedy that harm.  As HRSA specifically notes, "We do not

authorize covered entities to reclassify a purchase as 340B eligible after the fact. Covered entities participating in the 340B Program are responsible for requesting 340B pricing at the time of the original purchase." HRSA FAQ available at https://www.hrsa.gov/about/faqs/does-hrsa-authorize-covered-entities-retroactively-change-previous-quarters-transactions-non-340b (last reviewed by HRSA June 2024, last accessed November 21, 2024).  That is, if HRSA removes MaineGeneral from the 340B Program while this case is pending, MaineGeneral would not be able to recover the lost savings after the fact.

Therefore, this factor strongly favors a temporary restraining order.

### D.    The balance of equities supports a temporary restraining order

The Supreme Court and the D.C. Circuit Court have noted that when deciding motions for temporary restraining orders, courts must "carefully 'balance the competing claims of injury' … and weigh the 'effect on each party of the granting or withholding of the requested relief.'" *Singh v. Berger*, 56 F.4th at 96 (quoting *Winter*, 555 U.S. at 24).

As noted above, not granting MaineGeneral's requested relief and allowing HRSA to terminate it from the 340B Program would be disastrous both for MaineGeneral and the hundreds of thousands of patients that it serves. Also as noted above, MaineGeneral would not be able to correct that harm retroactively.

Conversely, there would be no harm whatsoever to HRSA, J&J, or the public at large should MaineGeneral remain in the 340B Program pending the resolution of this case. If the Court ultimately holds that HRSA acted appropriately in approving the audit of MaineGeneral, then J&J may proceed with investigating its suspicions of a violation and MaineGeneral will fully cooperate in the audit process. And if the audit finds that MaineGeneral violated provisions of the 340B statute, then HRSA may take appropriate action at that time, including imposing monetary penalties or terminating MaineGeneral's involvement in the 340B Program. *See* 42 U.S.C. §§

256b(a)(5)(D) & (d)(2)(B)(v). In essence, HRSA and J&J—and the public at large—would be in the same position at the end of this case that they were at the outset of this litigation.

As a result, this factor favors a temporary restraining order.

### E.     A temporary restraining order supports the public interest

When a government agency is a party, the "harm to the [agency] and the public-interest factor are 'one and the same' because … 'the government's interest *is* the public interest." *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 116 (D.D.C. 2022) (quoting *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)). If the government cannot make any "significant showing that the public … may be harmed by the entry" of a temporary restraining order, then the temporary restraining order is in the public interest. *Chef Time*, 646 F. Supp. 3d at 116.

As noted above, the only party facing possible harm is MaineGeneral—and the potential harm is dire. HRSA, on the other hand, faces no potential damage whatsoever. And the same goes for J&J, the manufacturer seeking to audit MaineGeneral, as well as the general public. Hence, all four factors favor granting the temporary restraining order that MaineGeneral seeks. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016) (granting injunction in part because the harms to the nonmoving party were "insufficiently grave to overcome the much more substantial countervailing harms" faced by the moving party).

### Conclusion

For the reasons set forth above, the Court should enjoin Carole Johnson, in her official capacity as Administrator, Health Resources and Services Administration, and Xavier Becerra, in his official capacity as Secretary, United States Department of Health and Human Services, from taking any action to alter, suspend, or terminate MaineGeneral Medical Center's status as a Covered Entity in the 340B Program.

Respectfully submitted,

By: */s James Junger*
Tyler James Junger
DC Bar Identification Number: WI0036
jjunger@hallrender.com
Todd A. Nova (pro hac vice)
tnova@hallrender.com
Hall, Render, Killian, Heath & Lyman, P.C.
330 East Kilbourn Avenue
Suite 1250
Milwaukee, WI  53202
(414) 721-0922

Brandon C. Helms (pro hac vice)
bhelms@hallrender.com
Hall, Render, Killian, Heath & Lyman, P.C.
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 457-7847

*Attorneys for Plaintiff MaineGeneral*
*Medical Center*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on November 22, 2024 a true and correct copy of the foregoing

*Motion for Temporary Restraining Order* was served via the CM/ECF System to all parties of

record.

By: <u>*/s James Junger*</u>
Tyler James Junger
DC Bar Identification Number: WI0036
jjunger@hallrender.com